IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
December 6, 2016 Session

### SONIA GONZALES v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 14-0024      J. Robert Carter, Judge**

_____

### No. W2015-02496-CCA-R3-PC

_____

The petitioner, Sonia Gonzales, appeals the denial of her petition for post-conviction relief, arguing that the court erred in finding that she received effective assistance of counsel. Following our review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT L. HOLLOWAY, JR., JJ., joined.

Eric J. Montierth, Memphis, Tennessee, for the appellant, Sonia Gonzales.

Herbert H. Slatery III, Attorney General and Reporter; Zachary T. Hinkle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Chris Lareau, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTS

On January 7, 2014, the petitioner was indicted by the Shelby County Grand Jury for aggravated burglary acting in concert, a Class B felony, and theft of property valued between $1,000 and $10,000, a Class D felony. On September 18, 2014, she pled guilty to aggravated burglary, a Class C felony, in exchange for a four-year sentence at 30% as a Range I offender. Pursuant to the terms of her negotiated plea agreement, the theft count of the indictment was dismissed.

At the guilty plea hearing, the prosecutor recited the following factual basis for the plea:

Had this matter gone to trial the State would put on proof that on September 9, 2013, Dara McNeal reported a burglary to her home. She reported that during the burglary several televisions, a PlayStation 3, an Xbox video game, a computer and various pieces of jewelry and purses were taken.

[The petitioner] was developed as a suspect. Ms. McNeal revealed that [the petitioner] had been staying in her home . . . prior to the burglary but she had been asked to leave as a result of some issues that she and Ms. McNeal had had. Ms. McNeal had been letting her stay there for free.

[The petitioner] was located and transported to the Raines Station GIB, she was Mirandized, she waived her right and she did give a detailed statement of admission to her involvement in the incident. She also, in her statement, identified two other individuals that were involved in the planning as well as the actual burglary itself. The victim valued the items taken in the burglary and the damage to her home to be at eighty-five hundred dollars.

On May 11, 2015, the petitioner filed a pro se petition for post-conviction relief, followed by, after the appointment of post-conviction counsel, an amended petition in which she raised claims of ineffective assistance of counsel and an unknowing and involuntary guilty plea. Specifically, she alleged that trial counsel was deficient for not adequately investigating her history of mental illness and her mental status at the time of the crime, for not following through on a filed motion to suppress her statement due to her untreated mental illness, and by misinforming her of her potential sentencing exposure if convicted of the indicted crimes. The petitioner asserted that, were it not for these failures in counsel's representation, she would not have pled guilty but would instead have chosen to proceed to trial. The petitioner further alleged that her guilty plea was not knowing and voluntary because of counsel's failure to adequately investigate her mental health and because of counsel's misinformation about her potential sentencing exposure. The petitioner also alleged in her petition that she was unaware that her guilty plea involved a forfeiture of the right to petition for a suspended sentence or a later reduction in sentence. She has not, however, raised that as an issue on appeal. Consequently, we will not summarize those portions of the evidentiary hearing that relate to that issue.

At the evidentiary hearing, trial counsel, a ten-year veteran of the Shelby County Public Defender's Office, testified that she was appointed to represent the petitioner on January 28, 2014. She said the petitioner was on probation at the time of the offenses and

had two prior felonies, a Class D felony and a Class E felony, which meant that she would be sentenced as a Range I offender. Initially, however, she mistakenly "quoted [the petitioner] sentencing [exposure] on two D's" rather than a D and an E felony, telling her that she would be sentenced as a Range II offender if convicted at trial of aggravated burglary acting in concert. Trial counsel stated that she cleared up the mistake with the petitioner sometime in mid-May, after the matter had been set for trial and before the petitioner's September 18, 2014 guilty plea. Specifically, she informed the petitioner that if she were convicted at trial, she would be sentenced as a Range I offender to an eight- to twelve-year sentence for aggravated burglary acting in concert, which could be ordered to be served consecutively to any sentence she received for theft of property.

Trial counsel testified that the petitioner told her at her arraignment that she had a mental health history of bipolar disorder and schizophrenia and was currently compliant with her medications. She said she asked the petitioner if she had been on her medications at the time of the offenses, and the petitioner informed her that she had not because "she had basically been on the street" at that time. Trial counsel stated that she saw no reason to investigate the petitioner's mental health history or to request a mental evaluation because the petitioner was responsive to her questions, did not exhibit any deficits, and appeared to understand everything that they discussed and what was happening with her case.

The petitioner also told trial counsel that she was not on her medications at the time she gave her statement to the police but that she understood what she was doing. Trial counsel said that the petitioner was responsive to the questions by police, did not appear to be confused in any way, and appeared to understand her rights and what she was doing in giving the statement. She, therefore, saw no basis for the statement to be suppressed. Nonetheless, at the petitioner's insistence, trial counsel filed a "bare bones" motion to suppress the statement on the basis of the petitioner's untreated mental illness. Trial counsel testified that the motion was never heard because the petitioner pled guilty. She did not, however, believe that it would have been granted had it been heard.

Trial counsel testified that the State made three offers in the case, all of which were rejected by the petitioner, before the petitioner ultimately accepted the four-year offer. The first was for a three-year sentence to be served consecutively to the sentence the petitioner received in another case, the second was to dismiss the first count of the indictment and for the petitioner to serve a two-year sentence as a Range I offender on the theft count of the indictment, and the third was for a three-year sentence with no petition to suspend the remainder of the sentence. According to trial counsel, the petitioner rejected the offers because she had eight children and did not want to plead to an offense for which she did not believe she was guilty. Trial counsel testified that the petitioner changed her mind sometime in May, but the State indicated that the last offer

was no longer on the table, so they continued to prepare for trial. Approximately a week before the scheduled trial date, the prosecutor made the four year offer, which the petitioner ultimately accepted.

On cross-examination, trial counsel reiterated that the petitioner discussed the case openly and candidly, appeared lucid, and showed no lack of understanding regarding the theories of defense or any issues in the case. She said that on March 10, when she and everyone else were still operating under the mistaken belief that the petitioner would be a Range II offender on the aggravated burglary acting in concert charge, the petitioner rejected the plea offer in which the aggravated burglary count of the indictment would have been nolle prosequied and the petitioner sentenced to two years as a Range I offender on the theft charge, telling trial counsel that "she didn't care what her exposure was. She wasn't going to plead to something she did not do."

The petitioner testified that she was first "evaluated for bipolar schizophrenic and manic depressive" at the age of sixteen after she attempted suicide. She said she spent two and a half months at a mental health facility and was placed on medication, which helped her symptoms. At several times during her life, however, she had taken herself off the medication because she "felt like she was okay." At those times, she ended up abusing crack cocaine, heroin, and alcohol. She also experienced mood swings, heard voices, and had trouble with her memory.

The petitioner testified that she had not been taking her medication for approximately four months at the time of her arrest in the instant case. She said she was arrested at a "dope house" where she was using illegal drugs and where she had just been "jumped" and severely beaten. As a result, her memory of that time was cloudy. She claimed she did not remember very much about being questioned by the police about the aggravated burglary and did not understand the papers she signed during that process. She stated that it took about two weeks after resuming her medication for the drugs to become effective. She testified that she informed counsel about her mental illness, but they did not "discuss much of it[.]"

The petitioner further testified that counsel told her she would lose the case if she went to trial and would receive a sentence of twelve to twenty years for the aggravated burglary acting in concert charge. She said counsel told her she faced a potential sentence of twenty-four years at thirty-five percent if convicted of all the charges. The petitioner stated that she rejected the first offers because she was not guilty. She said she ultimately decided to plead guilty because trial counsel kept telling her that she would lose at trial and that she would spend half her life in prison. She also claimed that, at the time she entered her plea, counsel was still advising her that she faced a sentence of

-4-

twelve to twenty years if convicted at trial.  She said that, had she known it was only eight to twelve years, she would have opted to take the case to trial.

On cross-examination, the petitioner acknowledged that she was not interviewed about the burglary until three days after her arrest.  She said she did not read the waiver of rights or her statement before signing them and could not recall anything she said.  On redirect, the petitioner testified that she was not taking her medication at the time she gave the statement.  In response to questioning by the post-conviction court, she acknowledged that she was on her medication when she entered her guilty plea and that she signed the waiver of trial and request for acceptance of guilty plea forms.

On December 18, 2015, the post-conviction court entered an order denying the petition, finding that the guilty plea was knowingly and voluntarily entered and that the petitioner failed to demonstrate that she received ineffective assistance of counsel.

## ANALYIS

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence.  See Tenn. Code Ann. § 40-30-110(f).  When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them.  See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996).  Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence.  See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997).  However, review of the post-conviction court's application of the law to the facts of the case is de novo, with no presumption of correctness.  See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998).  The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed de novo, with a presumption of correctness given only to the post-conviction court's findings of fact.  See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding.  Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee).  The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that

-5-

counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). Moreover, the reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). The prejudice prong of the test is satisfied by showing a reasonable probability, i.e., a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In the context of a guilty plea, the petitioner must show a reasonable probability that were it not for the deficiencies in counsel's representation, he or she would not have pled guilty but would instead have insisted on proceeding to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985); House v. State, 44 S.W.3d 508, 516 (Tenn. 2001).

Courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

On appeal, the petitioner argues that trial counsel was deficient for "repeatedly and incorrectly advis[ing]" her about her potential sentencing exposure and for "total[ly]" failing to investigate her mental illness. She asserts that, but for these deficiencies in counsel's performance, she would not have pled guilty but would have proceeded to trial. The State responds by arguing that the petitioner has not demonstrated any prejudice due to counsel's initial misstatement of her sentencing exposure or any deficiency in counsel's performance or resulting prejudice to her case due to counsel's failure to litigate the motion to suppress or further investigate the petitioner's mental health.

-6-

In denying relief on the petitioner's claims, the post-conviction court accredited the testimony of trial counsel that she corrected her initial error regarding the petitioner's sentencing exposure approximately four months before the petitioner entered her guilty plea, that the petitioner was "lucid" and exhibited no problems in communication or understanding, and that counsel "went over everything" with the petitioner and had the petitioner "think about it overnight" before the petitioner entered her plea. The court, additionally, observed that the guilty plea colloquy itself "demonstrate[d] Petitioner's willingness to plead guilty." With respect to the petitioner's claim that trial counsel was ineffective for failing to litigate the motion to suppress or to further investigate the petitioner's mental health, the post-conviction court noted that the motion to suppress was not heard because the petitioner decided to plead guilty. The court further noted the statement was "very detailed," with an inclusion of facts that indicated its reliability. The court, therefore, found that the petitioner's claim that she did not understand what she was doing when she made the statement was not supported by the evidence. In sum, the court concluded that the petitioner's guilty plea was "clearly knowingly and voluntarily entered" and that she "failed to demonstrate that her attorney's actions forced her to enter a guilty plea."

The record fully supports the findings and conclusions of the post-conviction court. As the post-conviction court noted, trial counsel's initial misstatement of the potential sentencing exposure was rectified long before the petitioner entered her guilty plea. Trial counsel also offered a reasonable explanation for why she did not pursue further investigation into the petitioner's mental health, testifying that the petitioner was lucid in their conversations, exhibited no deficits in understanding, and informed her that she had understood what she was doing when interviewed by the police and deciding to give her statement. In addition, counsel's review of the statement revealed that the petitioner appeared to be fully aware of her rights and what she was doing when giving the statement. The petitioner has not, therefore, met her burden of demonstrating that she received ineffective assistance of counsel or that her guilty plea was unknowing and involuntary.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the post-conviction court denying the petition.

_____
ALAN E. GLENN, JUDGE

-7-